RATTET PLLC
*Attorneys for the Debtor*
202 Mamaroneck Avenue
White Plains, New York 10601
(914) 381-7400
Robert L. Rattet, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

HEADLESS HORSEMAN ENTITIES, INC,                    Chapter 11
                                                    Case No. 12-24137(RDD)

                                    Debtor.
---------------------------------------------------------X

## DISCLOSURE STATEMENT

## I. INTRODUCTION

The above-captioned debtor and debtor-in-possession, Headless Horseman Entities,

Inc. (the "Debtor") submits this Disclosure Statement ("Disclosure Statement") pursuant

to Section 1125(b) of the Bankruptcy Code and Bankruptcy Rule 3017 in connection with its

Chapter 11 Liquidating Plan ("Plan") dated December 9, 2019 to all known holders of

Claims[1] against or Interests in the Debtor in order to adequately disclose information deemed

to be material, important and necessary for the Debtor's creditors to make a reasonably

informed judgment about the Plan. A copy of the Plan is attached hereto as Exhibit "A."

---

1 Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Plan.

The Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan for **February __, 2020 at 10:00 a.m.** (the "<u>Confirmation Hearing</u>"). Under Section 1126(b) of the Bankruptcy Code, only Classes of Allowed Claims that are "impaired" under the Plan, as defined by Section 1124 of the Bankruptcy Code, are entitled to vote on the Plan. Generally, a Class is impaired if its legal, contractual or equitable rights are altered under the Plan. Class 4 Unsecured Creditors under the Plan are impaired and therefore are entitled to vote.

To be accepted by a Class, the Plan must be accepted by more than one half in number and two-thirds in dollar amount of the Allowed Claims actually voting in such Class.

Accompanying this Disclosure Statement are copies of the following documents **(Exhibits A and B):**

      **A.**      **The Plan; and**
      **B.**      **Estimated Plan Distribution Analysis.**

**THE COURT HAS NOT APPROVED THE PLAN AND THIS DISCLOSURE STATEMENT IS NOT TO BE CONSTRUED AS AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT. CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL REGARDING THE PLAN.**

**BALLOTS ACCEPTING OR REJECTING THE PLAN MUST BE MAILED OR HAND DELIVERED (FAXED OR E-MAILED BALLOTS WILL NOT BE COUNTED) TO RATTET PLLC, 202 MAMARONECK AVENUE, WHITE PLAINS, NEW YORK 10601, ATTENTION: ROBERT L. RATTET, ESQ. <u>SO AS TO BE RECEIVED ON OR BEFORE 4:00</u> P.M. EASTERN TIME, ON FENRUARY __, 2020 FOR THEM TO BE CONSIDERED.**

**YOUR VOTE ON THE PLAN IS IMPORTANT.**

# I. INTRODUCTION

## A. Background

The Debtor is a single asset real estate entity, formed in or about 1995 which owns and leases certain improved real estate located at 410 North Broadway, Sleepy Hollow, New York ("Property"). The Debtor acquired the Property in 1995. The Property currently consists of 1 improved and 9 unimproved tax lots.

When the Debtor acquired the Property from the Schlegel family, the Property and gas station located thereon were in a state of disrepair, requiring substantial improvement and renovation. In addition, in order to realize the potential value of the Property, the 9 unimproved tax lots, which comprise a substantial portion of the Property, needed to be improved and developed.

Unfortunately, the Property was never able to be developed by the Debtor due to continuous resistance and difficulties encountered by the Debtor in dealing with the Village of Sleepy Hollow ("Village") when it attempted to renovate the existing gas station and surrounding 9 contiguous tax lots which comprise the Property.

At one point in the mid-90's, the Debtor obtained initial approvals from the Village to renovate and expand the gas station. However, the Village failed to extend the application's expiration and otherwise hindered the Debtor's attempts to improve the Property and continues to do so to this day.

As a result, the Debtor was only able to lease out the gas station for below market rent, and the value of the Property since the Debtor acquired it has always been substantially less than the value the Village and the Town of Mt. Pleasant (the "Town")

have assessed the Debtor for real estate taxes.

As a result of such over-taxation, the Debtor , for each year going back to at least 1994 with respect to the Village, and 2008 with respect to the Town, has filed tax certiorari proceedings. Notwithstanding, neither the Village or the Town have ever remedied the overvaluation problem, have continued to over assess the Property and overtax the Debtor and haver further refused to issue tax certiorari refunds or setoff/credits.

This was the driving factor precipitating both the prior Chapter 11 filing in 2005 (see below) and the present case.

Moreover, the Debtor had, until just 2 years ago, been plagued with title issues since it took title to the Premises in 1995. These title issues have historically prevented the Debtor from refinancing the Schlegel mortgage (described below), selling and/ or upgrading the improvements which would in turn generate more revenues.

The Debtor leases the gas station located on a small lot on the Property to AP Petroleums Corp. pursuant to a fifteen (15) year written lease which currently has three (3) years remaining on its term (the "Lease").

On December 8, 2005, the Debtor filed a Chapter 11 bankruptcy case in this Court under Case number 05-27039(ASH) (the "Prior Chapter 11 Case") and confirmed a chapter 11 plan of reorganization on March 1, 2007 (the "Prior Confirmed Plan").

Subsequent to confirming said plan, the Debtor anticipated curing the title defects and upgrading the Premises so that it could increase the cash flow and value of the Property and make its plan payments to the Town and Village, respectively. However, the Debtor was unable to complete this work before cash flow shortages ensued once more. The Debtor defaulted on its payments to the local taxing authorities and under the Prior

Confirmed Plan and a tax foreclosure was commenced.

This situation was exacerbated by creditor activity (seeking to enforce a judgment against a *different entity* owned by the deponent) which restrained the monthly rental payments from the Debtor's tenant, albeit improperly, which resulted in a complete cash flow stoppage.

In the instant Chapter 11 Case, the Debtor finally rectified the title defects so that it may now obtain a refinance for funding the Plan and has been working feverishly with its professionals to determine and resolve the years and years of tax certiorari claims for refunds, setoffs and credits against the Town and the Village, respectively.

The Debtor has to date been unable to resolve its real estate tax disputes with the Town and Village, as the Town, in particular, has required that the Debtor first satisfy all of their Claims (approximately $375,000 from the Prior Chapter 11 case and approximately $300,000 from 2007 through the Petition Date) prior to considering the Debtor's tax certiorari claims. This has thrown the Debtor into a "catch 22", as it needs the tax certiorari refunds and setoff claims to be applied in order to effectuate the Refinance (as defined in the Plan).

The Debtor, despite its continued protests and certiorari claims, has remained current in all of its real estate tax obligations during the Chapter 11 Case. The Debtor is currently attempting to globally resolve its tax certiorari issues with the Town and Village without the need for litigation and/or determination by the Bankruptcy Court under Section 505 of the Bankruptcy Code.

**The Chapter 11 Filing**

In order to reorganize and restructure its affairs, on December 21, 2012, (the "Petition Date"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

1. Employment of the Debtor's Professionals

On January 8, 2013 the Debtor filed an application to retain DelBello Donnellan Weingarten Wise & Wiederkehr, LLP as its bankruptcy counsel. On January 23, 2013, the Court entered an order authorizing the retention of the DelBello firm. On April 4, 2013, the Court entered an order authorizing Colasanti & Iurato, LLP as accountants to the Debtor. On May 16, 2013, the Court entered an order authorizing Joseph St. Onge as special tax certiorari counsel to the Debtor. On April 12, 2019, the Court entered an order authorizing Rattet PLLC to be retained as substitute counsel for the Debtor *nunc pro tunc* as of March 26, 2019.

2. Filing of Schedules of Assets and Liabilities and Statement of Financial Affairs

On January 9, 2013 the Debtor filed its Schedules of Assets and Liabilities, together with its Statement of Financial Affairs (collectively, the "Schedules"). The Debtor's Schedules are available on the Bankruptcy Court's website: www.nysb.uscourts.gov. (login/password required).

3. Establishment of a Claims Bar Date and Claims Process; No Avoidance Actions

Pursuant to an Order of the Bankruptcy Court, May 3, 2013 was established as the last date by which creditors may file proofs of claim in the Chapter 11 case ("Bar Date"), and

subsequently notice of the Bar Date was served on all creditors listed on the Debtor's creditor matrix filed with the Bankruptcy Court as well as parties filing notices of appearance and creditors who had previously filed a proof of claim in the case.

The Debtor, together with current counsel, has reviewed all Claims filed. Subject only to the results of the Debtor's negotiations with the Town and Village as described above, and the Claims of the Town and Village, respectively, the Debtor at this point does not anticipate objecting to any other Claims, nor does the Debtor intend to bring any avoidance actions under Chapter 5 of the Bankruptcy Code.

4. <u>The Debtor's Operations.</u>

The Debtor continues to receive rent from its tenant and pay its ongoing post-Petition Date taxes in full.

## II. THE PLAN OF REORGANIZATION

THE FOLLOWING IS A SUMMARY OF THE PLAN; THE TERMS OF THE PLAN GOVERN, AS THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT. CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN AND TO MAKE AN INFORMED JUDGMENT CONCERNING IT.

The Plan will be funded with (a) the Debtor's cash on hand on the Confirmation Date and the net proceeds from the Sale. These funds are expected to be sufficient to pay all Allowed Administrative, Priority Claims, Secured and Unsecured Claims, and the Disbursing Agent shall effectuate all payments due under the Plan. THE DEBTOR STRONGLY RECOMMENDS THAT CREDITORS ACCEPT THE PLAN.

**A.      Treatment of Unclassified Claims Under the Plan**

1.      <u>Allowed Administrative Claims other than Claims of Professionals</u>: The Debtor has remained current in its post-Petition Date expenses and, therefore, does not anticipate any Allowed Administrative Claims on the Confirmation Date with the exception of Administrative Claims of its retained Professionals. However, to the extent that any such Claims should exist, they shall be paid in the ordinary course and according to the terms and conditions of the respective contracts underlying such Claims.

2.      <u>Allowed Administrative Claims of Professionals</u>: Allowed Administrative Claims of Professionals shall be paid, in full, in Cash, upon the later of (i) allowance by the Court pursuant to Section 330 of the Bankruptcy Code or (ii) the Effective Date. The Administrative Claims of Professionals consist of those of (a) Rattet PLLC, substitute attorneys for the Debtor, in the estimated amount, as of the Confirmation Date, of $22,500, (b) Colasanti & Iurato, LLP, accountants for the Debtor, in the estimated net outstanding amount, as of the Confirmation Date, of $15,000 and (c) Joseph St. Onge, whose Claim is undeterminable at this time and will be based upon the Debtor's savings realized from its tax certiorari Claims, subject to the terms of his Court approved retainer agreement as may be modified by the Debtor and said Professional[1].

---

[1] The retention agreement provides for such Professional to receive an amount equal to 33% of actual tax savings received by the Debtor as a result of his services. The parties expect to agree to a reduced compensation arrangement in order to accommodate the debtor and the estate. Such modified arrangement will be reflected in any fee application brought by Mr. St. Onge.

3.      United States Trustee's Fees: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930 and 31 U.S.C. §3717 shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtor. The Debtor shall be responsible for the payment of United States Trustee quarterly fees through the entry of a final decree closing the Chapter 11 Case. The Debtor is current in the payment of all United States Trustee fees to date.

4.      Allowed Administrative and Priority Tax Claims: The Debtor shall pay, in full and in cash, all Allowed Administrative (if any) and Priority tax Claims pursuant to Section 507(a)(8) of the Bankruptcy Code) within ten (10) days after the Effective Date. The Priority tax Claims consist of the Claims of the New York Department of Taxation and Finance in the Allowed amount of $1,059.42.

**B.      Treatment of Classes Under the Plan**

CLASS 1 – Priority Claims: Class 1 consists of the Allowed Priority Claims other than Allowed Tax Claims. Class 1 Claims total in the aggregate approximately $0. Class 1 Claims, if any, will be paid in full in Cash on or shortly after the Effective Date. The Allowed Class 1 Claims are unimpaired and, as such, the holders of such Allowed Claims shall be deemed to accept the Plan.

CLASS 2 – Allowed Secured Claims of Town of Mt. Pleasant (the "Town"). Class 2 consists of the Allowed Secured Claims of the Town. The Town claims it is currently owed, the sum of $685,023.13. The Debtor disputes this amount, claiming it has setoffs and claims for refunds arising out of its pending tax certiorari proceedings. The Debtor estimates the Allowed amount of the Town's Class 2 Claim to be $300,000. Under the Plan,

the holder of Class 2 Secured Claims shall be paid the full amount of its Allowed Claim, together with statutory interest thereon through and including the date the allowed Claim is paid in full, upon the later to occur of (a) determination of the amount of the Allowed Claim pursuant to a Final Order of the Bankruptcy Court or (b) the Sale Closing Date. Class 2 Claims are unimpaired and deemed to accept the Plan.

CLASS 3 – Allowed Secured Claims of the Village of Sleepy Hollow (the "Village"). Class 3 consists of the Allowed Secured Claims of the Village. The Village claims it is currently owed, the sum of $156,540.96. The Debtor disputes this amount, claiming it has setoffs and claims for refunds arising out of its pending tax certiorari proceedings. The Debtor estimates the Allowed amount of the Village's Class 3 Claim to be $100,000. Under the Plan, the holder of Class 3 Secured Claims shall be paid the full amount of its Allowed Claim, together with statutory interest thereon through and including the date the allowed Claim is paid in full, upon the later to occur of (a) determination of the amount of the Allowed Claim pursuant to a Final Order of the Bankruptcy Court or (b) the Sale Closing Date. Class 3 Claims are unimpaired and deemed to accept the Plan.

CLASS 4 – General Unsecured Claims: Class 4 consists of the holders of Allowed Unsecured Claims, which total approximately $10,000. Each holder of an Allowed Class 4 Unsecured Claim, if any, shall be paid in full, with no interest thereon on or shortly after the Effective Date in full and final satisfaction of Class 4 Claims. Allowed Class 4 Claims, if any, are impaired under the Plan.

CLASS 5 – Equity Interests: Class 5 consists of the Interests of Wayne Jeffers, Sr., the holder of 100% of the equity Interests in the Debtor. The holder of the Class 5 Interests shall receive no distribution on account of his Interests. Class 5 Interests are deemed to reject

the Plan.

**C.     Provisions Regarding Corporate Governance and Management of the Debtor Post-Confirmation**

<u>Means for Implementation.</u> The Plan shall be funded (a) with the Debtor's available cash on the Confirmation Date and (b) the proceeds from the Sale.

<u>Sale of the Property</u>. The Property shall be sold pursuant to Bankruptcy Code Sections 363 and 1123(a)(5), free and clear of any and all Liens, Claims, and encumbrances (except for Assumed Contracts) to the fullest extent provided by the Bankruptcy Code or other applicable law.

<u>Vesting of Assets</u>. Except as otherwise provided in the Plan, on the Sale Closing Date, to the fullest extent provided by the Bankruptcy Code or other applicable law, the Property shall vest in the Purchaser free and clear of all Liens, Claims and encumbrances (other than Assumed Contracts), and any other Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall attach to the Sale proceeds as of such date.

<u>Transfer Taxes</u>. Pursuant to Section 1146(a) of the Bankruptcy Code, any issuance, transfers or exchange of property under the Plan and the making or delivery of an instrument of transfer of property or otherwise under the Plan, including the Sale shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax or governmental assessment in the United States or by any other governmental unit, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for

filing and recordation instruments or other documents pursuant to or in connection with such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to any sale of the Property under the Plan to the Purchaser.

Post-confirmation Management of Debtor. Following the Effective Date, Wayne Jefffers shall continue to serve as President of the Debtor at a compensation of $0 per annum.

Corporate Action. Upon the entry of the Confirmation Order, all matters provided under the Plan involving the corporate structure of the Debtor shall be deemed authorized and approved without any requirement of further action by the Debtor, the Debtor's shareholders and/or members, or the Debtor's boards of directors, managers, and/or managing members.

**D. Resolution Of Disputed Claims & Reserves**

(a) Objections. An objection to or determination of the allowance of a Claim or Administrative Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest on or before the Effective Date, subject to an extension of such deadline by the Bankruptcy Court, for cause.

(b) Amendment of Claims. A Claim may be amended after the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Code and Bankruptcy Rules.

(c) Reserve for Disputed Claims. The Debtor shall reserve, on account of each holder of a Disputed Claim, that property which would otherwise be distributable to such

holder on such date and thereafter were such Disputed Claim an Allowed Claim on the Effective Date, or such other property as the holder of such Disputed Claim and the Debtor may agree upon. The cash so reserved for the holder, to the extent such Disputed Claim is Allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed as provided in the Plan to such holder, in the amount allocable under the Plan to such Allowed Claim.

(d) <u>Claims Estimation</u>. The Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether the Debtor has previously objected to such Claim, and the Bankruptcy Court retains jurisdiction to estimate any Claim at any time, including, without limitation, during litigation concerning any objection to such Claim. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount constitutes either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.

(e) <u>Distributions to Holders of Subsequently Allowed Claims</u>. Unless another date is agreed on by the Debtor and the holder of a particular subsequently Allowed Claim, the Debtor shall, within ten (10) days after an Order resolving the Disputed Claim becomes a Final Order, distribute to such holder with respect to such subsequently Allowed Claim that amount, in cash, from the cash held in reserve for such holder and, to the extent such reserve is insufficient, from any other source of cash otherwise available to the Debtor, equal to that

amount of cash which would have been distributed to such holder from the Effective Date through such distribution date had such holder's subsequently Allowed Claim been an Allowed Claim on the Effective Date. The holder of a subsequently Allowed Claim shall not be entitled to any interest on the Allowed Amount of its Claim.

(f)    <u>Disputes Regarding Rights to Payments or Distribution</u>. In the event of any dispute between and among claimants (including the entity or entities asserting the right to receive the disputed payment or distribution) as to the right of any entity to receive or retain any payment or distribution to be made to such entity under the Plan, the Debtor may, in lieu of making such payment or distribution to such entity, remit the disputed portion of the Claim into an escrow account or to a distribution as ordered by a court of competent jurisdiction as the interested parties to such dispute may otherwise agree among themselves. Notwithstanding anything to the contrary, the Debtor shall make distributions on account of the undisputed portion of a Claim to such claimants.

(g)    <u>Claims Procedures Not Exclusive</u>. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Effective Date, Claims which have been estimated may subsequently be compromised, settled, withdrawn, or otherwise resolved without further order of the Bankruptcy Court.

**E.  Amendment, Modification, Withdrawal or Revocation of the Plan.**

The Debtor reserves the right, in accordance with the Section 1127 of the Code, to amend or modify the Plan and to seek the authorization of the Bankruptcy Court as may be required.

The Debtor may withdraw or revoke the Plan prior to the Confirmation Date. If such a withdrawal or revocation occurs, or if Confirmation does not occur, the Plan will be null and void. In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**F. Unclaimed Property**

Except as otherwise provided herein, in the event any claimant fails to claim any distribution within 120 days from the date of such distribution, such claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a disallowed Claim. Distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be later designated by a creditor in writing. The Debtor shall use its best efforts to obtain current addresses for all claimants. The Debtor shall notify the Debtor of all returned distributions. All unclaimed cash shall be returned to the reorganized Debtor.

**G. Disbursing Agent.** Rattet PLLC will be the distribution agent responsible for making all distributions and maintaining the disputed Claims Reserve under the Plan. Unless the Bankruptcy Court orders otherwise, the Disbursing Agent will not be bonded against the faithful performance of its duties under the Plan.

***H.* Discharge and Plan Injunction. *The Debtor shall not receive a discharge under Section 1141 of the Bankruptcy Code. Except as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims or Interests, including***

*Administrative Claims, against or in the Debtor shall, as of the Effective Date, be enjoined from:*

*(a) commencing, conducting, or continuing, in any manner, any suit, action, or other proceeding of any kind (including, without limitation, in any judicial, arbitral, administrative or other forum) against the Debtor or reorganized Debtor with regard to such entities' Claim against the Debtor;*

*(b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collection or otherwise recovering by any manner or means, whether directly or indirectly, or any judgment, award, decree, or order against the Debtor or reorganized Debtor with regard to such entities' Claim against the Debtor;*

*(c) creating, perfecting or otherwise enforcing, in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or reorganized Debtor, the property of the Debtor or reorganized Debtor, or any successor-in-interest to the Debtor or reorganized Debtor with regard to such entities' Claim against the Debtor;*

*(d) asserting any set off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the property of the Debtor, or any successor- in-interest to the Debtor with regard to such entities' Claim against the Debtor; and*

*(e) acting in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.*

*I. **Exculpation**. Neither the Debtor nor any of its shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to*

*be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this chapter 11 case or the Plan except with respect to its obligations under the Plan and any related agreement, with the exception of any such act or omission taken in bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Section 8.3 of the Plan shall (a) effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor or any of the Released Parties, nor shall anything in Section 8.3 of the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against any Released Party for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, ERISA, the environmental laws or any criminal laws of the United States or any state and local authority, including the New York Tax Law, nor shall anything in Article VIII of the Plan exculpate any party from any liability to the United States Government or any of its agencies, including any state and local authority, including New York State Department of Taxation and Finance whatsoever, including liabilities arising under the Internal Revenue Code, ERISA, the environmental laws or any criminal laws of the United States or any state and*

*local authority, including the New York Tax Law, against the Parties referred to herein, or (b) limit the liability of the Debtor's Professionals pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.*

### J. Full and Final Satisfaction

Pursuant to the Plan, all payments and all distributions thereunder shall be in full and final satisfaction, settlement, release and discharge of all Claims and Interests, except as otherwise provided in the Plan.

### K. Retention of Jurisdiction

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 case:

(a)   To determine all controversies relating to or concerning the allowance and/ or distribution on account of such Claims or Interests, upon objection thereto, such Claims by any party in interest, including the estimation of Claims under Section 502(c) of the Code;

(b)   To determine requests for payment of Claims entitled to priority under Section 507(a)(2) of the Code, including any and all applications for compensation for professional fees and expenses;

(c)   To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28

U.S.C Sections 157 and 1334;

(d)   To determine all disputed, contingent or unliquidated Claims;

(e)   To determine requests to modify the Plan pursuant to Section 1127 of the Code

or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Code;

(f) To make such orders as are necessary or appropriate to carry out the provisions of, and enforce, the Plan;

(g) To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Plan; and

(h) To enter a final decree closing the Chapter 11 case.

**L. Contracts and Unexpired Leases**

Any unexpired lease or executory contract that has not been previously assumed, rejected and/or modified by order of the Bankruptcy Court or has not naturally expired during the course of the Chapter 11 case, including but not limited to the Lease, shall, as of the Effective Date, be deemed to have been assumed by the Debtor and assigned to the Purchaser at the Sale Closing Date. This shall include all modified contracts entered into concerning equipment leases and financing between the debtor and equipment lessors. Because the Debtor believes that it is current under such contracts, the Debtor does not anticipate any cure payments due as a result of the assumption of the agreements. **Parties to executory contracts or unexpired leases must assert a cure payment owing (other than payments owing in the ordinary course), before the Confirmation hearing date, subject to the Debtor's right to object to the assertion of such payment, or they will not receive a cure payment in connection with such assumption.**

**M. Post-Confirmation Fees, Final Decree**

The reasonable compensation and out-of-pocket expenses incurred post-

Confirmation Date by the professionals retained in the Chapter 11 Case shall be paid by the Debtor within ten (10) days upon presentation of invoices for such post-Confirmation Date professional services. All disputes concerning post-Confirmation Date fees and expenses shall be subject to Bankruptcy Court jurisdiction.

A final decree shall be entered as soon as practicable after distributions have commenced under the Plan.

### N. Continuation of Bankruptcy Stays

All stays provided for in the Chapter 11 Case under Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### O. Avoidance and Recovery Actions

As of and subject to the occurrence of the Effective Date, the Debtor will waive and release any causes of action under Sections 544, 547, 548, 550, 551 and 553 of the Bankruptcy Code, except that such waiver shall not extend to any defense asserted by the Debtor pursuant to Section 502(d) of the Bankruptcy Code to a Claim. The Debtor believes, after a thorough investigation and review with its counsel, that there are no such causes of action that would provide a meaningful source of funds for the Debtor's estate.

### III.   FINANCIAL INFORMATION

**A. The Debtor's Schedules of Assets and Liabilities**. Schedules of the Debtor's assets and liabilities and monthly operating reports have been filed with the Clerk of the Court and may be inspected by all interested parties.

**B. The estimated amounts required to be paid on the Effective Date are:**

Professional Fees & Expenses                                             $25,000

**Estimated Total Required on Effective Date ............................................ $25,000**

The payments required on Confirmation shall be funded with the Debtor's cash on hand.

      **C. Chapter 7 Liquidation Analysis.** If this case were converted to a case under Chapter 7 of the Bankruptcy Code and the Debtor's assets were liquidated by a Chapter 7 trustee, the holders of Class 2 Unsecured Claims would receive no distribution. Thus, the Debtor believes that the Plan satisfies the "best interests of creditors" test under Section 1129(a)(7) of the Code. As clearly set forth in the liquidation analysis prepared by the Debtor and annexed hereto as Exhibit "C", in a Chapter 7 liquidation, the Administrative Claims would be substantially higher than in a Chapter 11 due a variety of factors. First, a Chapter 7 trustee would be entitled to earn commissions and would hire his/her own professionals (e.g. legal counsel and financial advisor), which would result in additional expenses payable from the estate. In addition, the $200,000 DIP Loan Claim, the $75,000 in Professional Fees and the approximate $800,000 in Priority Claims would all be payable ahead of Unsecured Claims. These substantial additional Claims mean that there would be no distribution to unsecured creditors in the event of a liquidation. Therefore, the Debtor has satisfied Section 1129(a)(7) of the Bankruptcy Code, which requires that creditors receive a recovery under the Plan as they would receive in a hypothetical Chapter 7 case. Under the Plan, Unsecured Creditors are receiving, one time, cash equal to 100% of the full amount of their Allowed Claims.

**THE DEBTOR THEREFORE STRONGLY RECOMMENDS ACCEPTANCE OF THE PLAN. CREDITORS ARE URGED TO CONSULT WITH THEIR ATTORNEYS AND AMONGST THEMSELVES IN DETERMINING WHETHER TO ACCEPT OR REJECT THE PLAN.**

## IV. <u>CONFIRMATION PROCEDURE</u>

**A. Time to Vote.** Pursuant to a Court order, ballots on the Debtor's Plan must be filed on or before February __, 2020. All ballots should be properly completed as to whether the creditor accepts or rejects the Plan and be forwarded, in accordance with the instructions on the ballot, to Rattet PLLC, 202 Mamaroneck Avenue, Suite 300, White Plains, New York 10601, Attn: Robert L. Rattet, Esq.

**B. Solicitation of Votes.** Any holder of a Claim in Class 2 is entitled to vote if either (i) such holder's Claim has been scheduled by the Debtor in the Schedules filed with the Bankruptcy Court (provided that such Claim has not been scheduled as disputed, contingent or unliquidated), or (ii) such holder has filed a proof of Claim on or before June 29, 2012, the Bar Date (or, if not filed by such date, any proof of Claim filed with leave of the Bankruptcy Court), unless an objection to such Claim has been duly filed, or if the Bankruptcy Court has provisionally allowed the Claim for voting purposes. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that an acceptance or rejection was not solicited or procured or made in good faith or in accordance with the provisions of the Bankruptcy Code.

**C. Acceptance.** Class 4 will be deemed to have accepted the Plan if the Plan is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Claims actually voting of such Class. Any ballot which is executed by the holder

of an Allowed Claim or Interest, but which does not indicate an acceptance or rejection of the Plan, shall be deemed neither an acceptance nor a rejection of the Plan.

**D. Confirmation Hearing.** The Code requires the Bankruptcy Court to hold a hearing on the Debtor's request for Confirmation of the Plan after the ballots have been cast. The Confirmation Hearing has been scheduled for February __, 2020 at 10:00 a.m. in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 118, White Plains, New York 10601, set forth on the Order which accompanies this Disclosure Statement. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjournment made at the Confirmation Hearing. At the Confirmation Hearing, the Bankruptcy Court will  (a) determine, of a final basis, whether this Disclosure Statement contains adequate information for the purpose of Section 1121 of the Code, and (b)(i) determine whether the Plan has been accepted by the requisite majorities of each voting class; (ii) hear and determine all objections to the confirmation of the Plan; (iii) determine whether the Plan meets the requirements of the Bankruptcy Code and has been proposed in good faith; and (iv) confirm or refuse to confirm the Plan.

**E. Time to Objection to Disclosure Statement and the Plan.** The last date to object to confirmation of the Plan is February __, 2020. Objections must be filed and served as set forth in the Order accompanying the Disclosure Statement.

## F. Statutory Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Debtor will request that the Bankruptcy Court determine that the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. If it does so, the Bankruptcy Court shall enter an order confirming the Plan. Some of the applicable requirements of Section 1129 of the Bankruptcy Code are as follows:

(a)     The Plan must comply with the applicable provisions of the Bankruptcy Code;

(b)     The Debtor must  have complied with the applicable provisions of the Bankruptcy

Code;

(c)     The Plan has been proposed in good faith and not by any means forbidden by law;

(d)     Any payment made or promised to be made by the Debtor under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 case, or in connection with the Plan and incident to the Chapter 11 case, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(e)     The Debtor has disclosed the identity and affiliation of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor under the Plan. Moreover, the appointment to, or continuance in, such office of such individual, is consistent with the interests of holders of Claims and Interests and with public policy.

(f)     Feasibility: The Bankruptcy Code requires that in order to confirm the Plan, the

Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor (the "Feasibility Test").

For a plan to meet the Feasibility Test, the Bankruptcy Court must find that the Debtor will possess the resources to meet its obligations under the Plan. The Debtor intends to show that it will have sufficient funds on hand at Confirmation and at the Sale Closing Date to satisfy its Cash obligations under the Plan and as such, the feasibility requirement would be satisfied.

The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Code, including the Feasibility Test, that it is "fair and equitable," "does not discriminate unfairly," and has been proposed in good faith.

(g) Absolute Priority Rule. A plan cannot be confirmed under Section 1129 of the Bankruptcy Code if it provides for the retention of interests by the equity holders on account of such interests while senior classes of claims do not receive full payment. Since the Plan provides for 100% distribution to all Allowed Claims, and the Interests shall receive no distribution, the Plan satisfies the absolute priority rule.

**Objections to Confirmation.** Objections to confirmation must be in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector. Any such objection must be filed with the Bankruptcy Court and served upon the following, with a copy to the Bankruptcy Court's chambers, so that it is received by them on or before August 21, 2014, as set forth in the Order which accompanies this Disclosure Statement:

RATTET PLLC
Attorneys for the Debtor
202 Mamaroneck Avenue, Suite 300
White Plains, New York 10601
Attn: Robert L. Rattet, Esq.

Objections to confirmation of the Plan are governed by Federal Rule of Bankruptcy

Procedure 9014.

### G.  **Continuation of Bankruptcy Stays**

All stays provided for in the Chapter 11 Case under Section 362 of the Bankruptcy

Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force

and effect until the Effective Date.

### H.  **Conditions to Effective Date of the Plan**

The Plan shall not become effective unless and until the Confirmation Order in form

and substance reasonably acceptable to the Debtor and the United States Trustee shall have

been entered by the Bankruptcy Court and shall have become a Final Order.

## V.  **ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN.**

If the Plan is not confirmed and consummated the alternatives include: (i) preparation

and presentation of an alternative plan of reorganization; (ii) liquidation of the Debtor under

Chapter 7 of the Bankruptcy Code; or (iii) dismissal of the Chapter 11 Case, which would

result in all creditor claims and rights of collection and enforcement being restored in full.

## VI.  **POST-CONFIRMATION**

The Debtor shall be responsible for filing post-Confirmation Date reports with the

Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. Section

1930(a)(6) and 31 U.S.C. §3717 until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case.

The Debtor shall also be responsible for the filing of pre-Confirmation and post-Confirmation reports, until a final decree is entered. A final decree shall be entered as soon as practicable after distributions have commenced under the Plan.

## VII.  TAX CONSEQUENCES

**A.**       **Tax Consequences of Confirmation.** Confirmation may have federal income tax consequences for the Debtor and holders of Claims and Interests. The Debtor has not obtained and does not intend to request a ruling from the Internal Revenue Service (the "IRS"), nor has the Debtor obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by confirmation of the Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder. The Debtor, creditors and holders of Interests are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local and foreign tax laws, of the Plan. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain.  Accordingly, each holder of a Claim or Interest is strongly urged to consult with his or her own tax advisor regarding the federal, state and local tax consequences of the Plan, including but not limited to the receipt of cash under this Plan.

**B.**       **Tax Consequences to the Debtor.** The Debtor may not recognize income as a result of the discharge of debt pursuant to the Plan because Section 108 of the Internal Revenue Code provides that taxpayers in bankruptcy cases do not recognize income from discharge of indebtedness. However, a taxpayer is required to reduce its "tax attributes" by

the amount of the debt discharged. Tax attributes are reduced in the following order: (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive activity loss and credit carryovers; and (vi) foreign tax credit carryovers.

## VIII. <u>RECOMMENDATION</u>

The Debtor believes that Confirmation of the Plan is preferable to any of the alternatives described above. The Plan will provide greater recoveries than those available in liquidation to all holders of Claims. Any other alternative would cause significant delay and uncertainty, as well as substantial administrative costs.

**THUS, THE DEBTOR STRONGLY RECOMMENDS HOLDERS OF ALL CLAIMS VOTE TO ACCEPT THE PLAN. THE FOREGOING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE RELIED ON FOR VOTING PURPOSES. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BETWEEN THE DEBTOR AND ITS CREDITORS AND SHOULD BE READ TOGETHER WITH THIS DISCLOSURE STATEMENT IN ORDER THAT AN INTELLIGENT AND INFORMED JUDGMENT CONCERNING THE PLAN CAN BE MADE.**

Dated: Sleepy Hollow, New York
  December 9, 2019

HEADLESS HORSEMAN ENTITIES, INC.


By: */s/ Wayne Jeffers*
  Wayne Jeffers,
   President

RATTET PLLC
*Attorneys for the Debtor*
202 Mamaroneck Avenue
White Plains, New York 10601
(914) 381-7400


By: */s/ Robert L. Rattet*
  Robert L. Rattet